Salem

GEORGE DENNIS PENN III

v.

COMMONWEALTH OF VIRGINIA

No. 1635-90-3

Decided December 10, 1991

COUNSEL

William R. Light (Killis T. Howard, P.C., on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a bench trial, George Dennis Penn III was convicted of possession of cocaine. He was sentenced to five years in the penitentiary and fined $500. On appeal, Penn contends that the trial court erred by refusing to suppress evidence seized during a search made pursuant to an illegal arrest. We disagree and affirm the conviction.

On March 13, 1990, Officer Smith of the Lynchburg Police Department was working surveillance in the 1100 block of Rivermont Avenue in the City of Lynchburg. While observing the area through his binoculars, Officer Smith saw Penn throw a bottle onto the parkway area. Officer Smith relayed the information by radio to Officer Meechum who was in a vehicle in the area, and directed Officer Meechum to approach Penn. Officer Smith continued to observe as Officer Meechum approached Penn. Upon approaching Penn, Officer Meechum told Penn that he was going to receive a summons for littering. When Officer Meechum asked Penn for identification, Penn replied that he did not have any. Officer Meechum then placed Penn under arrest and patted him down. During the search, Officer Meechum discovered in Penn's right sock a small brown packet containing cocaine.

Penn argues that the cocaine seized during the search should have been suppressed as a result of an illegal arrest. He contends

that his warrantless arrest for littering violated Code § 19.2-81 because the misdemeanor offense was not committed in the presence of the arresting officer. While we agree that the arrest was invalid under Code § 19.2-81, we hold that such a violation of state law does not warrant application of the exclusionary rule to suppress the cocaine discovered in the search.

■ A police officer may make a warrantless arrest for a misdemeanor if the offense is committed in the officer's presence. Code § 19.2-81. Although the statute sets forth certain exceptions to this requirement, the parties agree that the exceptions do not apply in the present case. Moreover, the parties agree that littering is a misdemeanor and that the arresting officer did not have a warrant. Therefore, the pivotal issue is whether the offense was committed "in the presence" of the arresting officer.

■ " 'An offense is committed within the presence of an officer, within the meaning of this rule, when he has direct personal knowledge, through his sight, hearing, or other senses that it is then and there being committed.' " *Durant v. City of Suffolk*, 4 Va. App. 445, 447, 358 S.E.2d 732, 733 (1987) (quoting *Galliher v. Commonwealth*, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933)). Thus, in order for Penn's arrest to be valid, Officer Meechum, who arrested Penn, must have had "personal knowledge acquired by his personal senses that an offense was committed in his presence." *Id.* (citing Code § 19.2-81).

The record reflects that the arresting officer did not actually see Penn litter, nor did he otherwise acquire knowledge through his personal senses that the offense had been committed. Officer Smith testified that he saw Penn litter while he was working surveillance, and relayed the information by radio to Officer Meechum. The evidence establishes that Officer Meechum's only source of knowledge that Penn littered was Officer Smith's radio call. Thus, Officer Meechum executed the arrest upon information he received from Officer Smith, not from information gathered through his personal senses. "If [the officer] has information that a misdemeanor has been committed, but not in his presence, he must obtain a warrant and make the arrest pursuant to that warrant." *Durant*, 4 Va. App. at 447-48, 358 S.E.2d at 733. Based on these facts, the "in the presence" requirement of Code § 19.2-81 has not been satisfied.

Although the offense was not committed in the presence of the arresting officer, the Commonwealth argues that the arrest was nonetheless valid. In particular, the Commonwealth argues that the arrest was a valid "police-team" arrest because the officer who observed the commission of the crime directed another officer to execute the arrest. Thus, the Commonwealth contends that Penn was, in effect, arrested by the officer who had observed the crime and the "in the presence" requirement was met.

The Commonwealth urges this Court to adopt the "police-team" qualification to the "in the presence" requirement. The "police-team" approach permits "officers who are working together on a case to combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense." *People v. Dixon*, 222 N.W.2d 749, 751 (Mich. 1974). According to this theory, "an act taking place within the view of one officer was in legal effect within the [presence and] view of the other cooperating officers." *Prosser v. Parsons*, 141 S.E.2d 342, 346 (S.C. 1965). Courts in other jurisdictions have recognized the "police-team" approach and have held that an arrest by one of a team of police officers may be valid even if the traditional "in the presence" rule was not technically met. *See, e.g., State v. Cook*, 399 P.2d 835, 836-39 (Kan. 1965); *Silverstein v. State*, 6 A.2d 465, 468 (Md. 1939); *People v. Dixon*, 222 N.W.2d 749, 751-52 (Mich. 1974); *Henry v. Commissioner of Public Safety*, 357 N.W.2d 121, 122-23 (Minn. Ct. App. 1984); *State v. Chambers*, 299 N.W.2d 780, 782 (Neb. 1980); *State v. Standish*, 363 A.2d 404, 404-06 (N.H. 1976); *State v. Lyon*, 706 P.2d 516, 519-20 (N.M. Ct. App.), *cert. denied*, 705 P.2d 1138 (1985); *Prosser v. Parsons*, 141 S.E.2d 342, 346 (S.C. 1965); *State v. Bryant*, 678 S.W.2d 480, 483 (Tenn. Crim. App. 1984), *cert. denied*, 469 U.S. 1192 (1985). However, we decline to follow these courts, and we reject the "police-team" qualification for warrantless misdemeanor arrests.

The purpose behind the presence requirement is to prevent officers from making warrantless misdemeanor arrests based upon information received from third parties. *See Dixon*, 222 N.W.2d at 751. The Commonwealth argues that adoption of the "police-team" qualification does not undermine this purpose because the

arrest was executed pursuant to reliable information from another officer, not from a third person. However, the fact that the third party who supplies the information happens to be a police officer is of no consequence. The Commonwealth would have us hold that a warrantless arrest for a misdemeanor committed outside the presence of the arresting officer is valid where the information upon which the arrest is based is conveyed to the arresting officer by the witnessing officer. We find that such a result in inconsistent with the prior holdings of the Supreme Court and this Court and the plain meaning of Code § 19.2-81.

 This Court has made it clear that "a legal warrantless arrest cannot be effectuated based upon the officer having information from others which leads him to believe an offense is being committed in his presence." *Durant*, 4 Va. App. at 448, 358 S.E.2d at 733. In *Durant*, we held that Durant's warrantless arrest for driving under the influence of alcohol was unlawful where the arresting officer had not observed Durant driving or committing any other offense, and the officer's only source of knowledge that Durant drove in that city was the radio call from another officer for assistance. *Id.* at 448, 358 S.E.2d at 734. Simply stated, information received from a third party, even a fellow law enforcement officer, is an inadequate substitute for the arresting officer's own observations and perceptions.

 Moreover, the "police-team" qualification is inconsistent with the plain language of Code § 19.2-81. "When interpreting a statute, the courts have a duty to give full force and effect to every word thereof." *Foote v. Commonwealth*, 11 Va. App. 61, 65, 396 S.E.2d 851, 854 (1990) (interpreting former Code § 19.2-81). Accordingly, a careful reading of the statute indicates that any departure from the misdemeanor presence rule, except as specified by the statute, is contrary to the legislative intent. Code § 19.2-81 clearly states that an officer "may arrest, without a warrant, any person who commits any crime *in the presence of such officer.*" (emphasis added). Moreover, the legislature set forth certain exceptions to the misdemeanor presence rule in Code § 19.2-81, indicating that a deviation from the presence requirement is authorized only in these limited circumstances. Pursuant to the exceptions, an officer may make a warrantless arrest for certain misdemeanors not committed in the officer's presence: shoplifting, carrying a weapon on school property, assault and battery, and

destruction of property.

Furthermore, the statute authorizes a warrantless arrest for a misdemeanor offense committed outside the officer's presence if the officer receives a radio message that a warrant for such offense is on file. Had the legislature intended to permit warrantless arrests for misdemeanors committed outside the presence of the arresting officer based upon information from a fellow officer, the legislature would have included this in the list of exceptions.

"The 'police-team' rule is a fiction to satisfy the presence requirement." Comment, *The Presence Requirement and the "Police-Team" Rule in Arrest for Misdemeanors*, 26 Wash. & Lee L. Rev. 119, 124 (1969). Adoption of the "police-team" approach would defeat the legislature's clear mandate that warrantless arrests for misdemeanors may be made only where the offense is committed in the officer's presence, unless the arrest falls within one of the enumerated exceptions. Absent a legislative authorization, we are unwilling to adopt a legal fiction that is inconsistent with the plain meaning of Code § 19.2-81.

Additionally, the Commonwealth argues that from a common sense approach it is "senseless" to require the officer who observed the misdemeanor from a distance to leave his post in order to effect the arrest, instead of continuing his surveillance. Indeed, it has been noted that the need for efficiency in police operations may warrant relaxation of the presence requirement:

With the existent speed and availability of transportation, criminals can quickly leave the scene of the crime. It is often virtually impossible for one officer to chase a suspect for many miles, especially in urban areas, and the immediate cooperation of other police is necessary to prevent his escape. A warrant cannot issue, in most instances, because it must be in the name of a known person or must specifically identify the suspect. Therefore, it is virtually impossible for any other officer to make the arrest. The presence requirement thus shackles police efficiency and the use of modern communications equipment.

Comment, *supra*, at 126-27.

The concern for convenience and efficiency does not outweigh the fundamental importance of the requirement that an officer base a warrantless arrest for a misdemeanor upon information gathered through his personal senses. Simply put, the arguments advanced by the Commonwealth in favor of the "police-team" qualification are inadequate to warrant a deviation from the clear legislative scheme embodied in Code § 19.2-81 or the prior holdings of the Supreme Court and this Court. Therefore, Officer Meechum had no authority to effect a warrantless arrest of Penn.

■ Having determined that Penn's arrest was invalid, we must now consider whether the evidence seized in the search pursuant to his illegal arrest is admissible. As a general rule, an arresting officer may search an individual pursuant to a valid arrest. *See DePriest v. Commonwealth*, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987) (citing *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983)), *cert. denied*, 488 U.S. 985 (1988). However, if the arrest is illegal, any evidence seized in a search pursuant to that arrest is subject to exclusion. *See id.*

Recently, we had occasion to consider a case similar to the case at bar. In *Thompson v. Commonwealth*, 10 Va. App. 117, 390 S.E.2d 198 (1990), the defendant moved to suppress his confession, arguing that he had been illegally arrested without a warrant in violation of Code § 19.2-81 for a misdemeanor not committed in the present of the arresting officer. We held that in the absence of a fourth amendment violation, the confession was properly received by the trial court. *Id.* at 121-23, 390 S.E.2d at 200-02.

■ Not every violation of Code § 19.2-81 necessarily results in the exclusion of evidence. *See Horne v. Commonwealth*, 230 Va. 512, 519, 339 S.E.2d 186, 191 (1986) (Court refused to apply the exclusionary rule where defendant's detention violated state law, but the detention was otherwise constitutional). Where an illegal arrest under Code § 19.2-81 does not violate any constitutional rights, the defendant is not entitled to have evidence seized pursuant to that arrest excluded. *Thompson*, 10 Va. App. at 121, 390 S.E.2d at 200-01 (citing *Horne*, 230 Va. at 519, 339 S.E.2d at 191). In other words, the exclusionary rule adopted in *Mapp v. Ohio*, 367 U.S. 643 (1961), does not operate to exclude evidence where the defendant claims that rights provided to him under state statute have been violated, but fails to allege a deprivation of

constitutional rights. The Virginia Supreme Court has refused to adopt a state exclusionary rule for evidence obtained during an illegal detention under a state statute. *See Horne*, 230 Va. at 519, 399 S.E.2d at 191.

■ There is no constitutional violation where state police officers make warrantless arrests for misdemeanors not committed in their presence. "The Supreme Court has never ruled on the issue whether a warrantless misdemeanor arrest is valid when the offense was not committed in an officer's presence." *Thompson*, 10 Va. App. at 121, 390 S.E.2d at 201 (citing *Street v. Surdyka*, 492 F.2d 368, 371-72 (4th Cir. 1974)). However, the Fourth Circuit has stated: "We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence." *Street*, 492 F.2d at 372. In other words, there is no fourth amendment violation for misdemeanor arrests committed outside the presence of the arresting state officer. *See id.* at 371-72.

■ Moreover, the fact that Virginia has adopted a more stringent statutory requirement for warrantless misdemeanor arrests committed outside the officer's presence does not mean that Penn has acquired a constitutional right. "Although the states are free to impose greater protections for an arrest than those embodied in the federal constitution, by imposing such a requirement the States do not thereby also create a right of constitutional dimension." *Thompson*, 10 Va. App. at 122, 390 S.E.2d at 201. Under Virginia law, no suppression of evidence is required when evidence is obtained in violation of state law but when no constitutional violation has occurred. *See id.* at 121-22, 390 S.E.2d at 201. "While violations of state procedural statutes are viewed with disfavor, *Campbell v. Commonwealth*, 194 Va. 825, 831, 75 S.E.2d 468, 472 (1953), neither the Virginia Supreme Court nor the legislature has adopted an exclusionary rule for such violations." *Thompson*, 10 Va. App. at 122, 390 S.E.2d at 201.

■ Although Penn does not challenge the constitutionality of the arrest, it is evident that the arrest did not implicate his fourth amendment rights. The fourth amendment permits an officer who has probable cause to make a warrantless arrest. *See id.* Accordingly, probable cause is the standard for testing the constitutional validity of the arrest. *Id.* at 121, 390 S.E.2d at 201. Officer Meechum had probable cause to arrest Penn for littering. " '[T]he

test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed.' " *DePriest*, 4 Va. App. at 583-84, 359 S.E.2d at 543 (quoting *Bryson v. Commonwealth*, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970)). The radio message from Officer Smith, which was based on Smith's personal observations, was sufficient to give Officer Meechum probable cause to believe that Penn was guilty of littering.

We find that Penn was arrested in violation of Code § 19.2-81, but that his arrest was nonetheless constitutionally valid. In the absence of any deprivation of constitutional rights, an arrest in violation of state statute does not require exclusion of any evidence obtained as a result of the arrest. Therefore, the trial court properly admitted the evidence seized pursuant to the arrest. For these reasons, we affirm Penn's conviction.

*Affirmed.*

Coleman, J., and Elder, J., concurred.