COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Annunziata
Argued at Norfolk, Virginia


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2626-98-1        JUDGE JERE M. H. WILLIS, JR.
                                         MAY 28, 1999
MARK EDWARD REYNOLDS


             FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    Jerome James, Judge Designate

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellant.

            Earle C. Mobley (Marcus, Santoro, Kozak &
            Melvin, on brief), for appellee.


     The Commonwealth appeals a pretrial order suppressing

evidence obtained during an investigative stop of a car driven

by Mark Edward Reynolds.  It contends the trial court erred in

concluding that the stop violated the Fourth Amendment's

guarantees against unreasonable searches and seizures.  We

disagree and affirm the trial court's judgment.

     Upon appeal from an order granting a motion to suppress,

the Commonwealth must show the trial court's decision was

erroneous.  See Freeman v. Commonwealth, 20 Va. App. 658, 660,

460 S.E.2d 261, 262 (1995).  We will not disturb the trial

---

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

court's ruling unless it is plainly wrong or without evidence to support it.  See id.

As Reynolds, heading north, approached the intersection, he engaged his left-turn signal, proceeded to the northern edge of the break in the median, brought his vehicle to a stop approximately one foot from the curb of the northern median, and placed the front end of his vehicle across the yellow line of the left-turn lane of southbound traffic.  Although the intersection was marked with two "no U-turn" signs, nothing prohibited a left turn onto the entrance ramp to Interstate 264, which was accessible from the position of Reynolds' vehicle at the time of the stop.  Thus, Officer Laskey lacked sufficient basis upon which to conclude that Reynolds was about to make an illegal U-turn into the southbound lanes of Frederick Boulevard rather than a legal left turn onto the entrance ramp.  We cannot conclude, therefore, that the trial court's finding that Reynolds could have turned legally onto the entrance ramp was clearly erroneous, and we decline to disturb that finding on appeal.

Laskey's erroneous belief that Reynolds illegally crossed the yellow line of the oncoming turn lane constituted an insufficient basis for the stop of Reynolds' vehicle.  A police officer may stop a motor vehicle for investigatory purposes if the officer possesses a reasonable suspicion based on articulable facts that either the vehicle or an occupant is

subject to seizure for violation of law.  See Jackson v. Commonwealth, 22 Va. App. 347, 353, 470 S.E.2d 138, 141 (1996).  Contrary to Laskey's belief, it was not unlawful for Reynolds to cross the yellow line of the oncoming turn lane for the purpose of turning left onto the entrance ramp.  See Code § 46.2-804(6).  An officer's mistaken belief as to the law will not support a finding of probable cause or reasonable suspicion.  See Ford v. City of Newport News, 23 Va. App. 137, 145, 474 S.E.2d 848, 851-52 (1996).

The evidence supports the trial court's holding that the police lacked a factual basis for a reasonable suspicion that Reynolds was engaged in, or was about to engage in, illegal activity.  Thus, the traffic stop was an unreasonable seizure in violation of the Fourth Amendment.

The judgment of the trial court is affirmed.

Affirmed.

Annunziata, J., dissenting.

I dissent because, contrary to the majority, I find that the defendant could not have turned onto the entrance ramp to Interstate 264 from his position without completing an illegal U-turn on Frederick Boulevard.

A U-turn is defined as a turn "by a vehicle traveling along one side of a way by crossing the lane of oncoming traffic and turning into and proceeding along a lane on the other side of the way in a direction exactly opposite to the direction of movement at the start of the turn." Webster's Third New International Dictionary 2526 (1981). Officer Laskey testified that, because the defendant had driven "too far" north, the defendant could not have reached the entrance ramp without "looping around," entering the lanes of southbound traffic on Frederick, and returning to the ramp. The pictures introduced as exhibits support the conclusion that the defendant would have had to turn his vehicle into southbound traffic on Frederick, albeit briefly, before reaching the beginning of the entrance ramp to Interstate 264.

Based on this evidence, I believe the trial court's determination that the defendant could have legally turned left onto the entrance ramp was clearly erroneous. Because the evidence supports Officer Laskey's reasonably articulated suspicion that the defendant was about to make an illegal U-turn, I would hold that the stop was justified and reverse the

- 4 -

denial of the defendant's suppression motion.  See Layne v.

Commonwealth, 15 Va. App. 23, 25, 421 S.E.2d 215, 216 (1992).